**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**LAMEL LAMONT SMITH,**

     Plaintiff,

v.                                                                                   Civil Action No. **3:25CV616**

**MS. WETHINGTON-GODETT,** *et al.*,

     Defendants.

**MEMORANDUM OPINION**

Lamel Lamont Smith, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Smith's complaint. (ECF No. 1.)  The matter is before the Court on a motion to dismiss, (ECF No. 24), and a motion for summary judgment (ECF No. 33) filed by the defendants Angela Wethington-Godett, Lt. Funda Rigby, and the D.O.C. ("the Virginia Department of Corrections" or "VDOC"), as well as the Court's screening obligations pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  The Court provided Smith with notice pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).  (ECF No. 26, 35.)  Smith has filed a response to the motion to dismiss, (ECF No. 29), and a response to the motion for summary judgment (ECF No. 36).  The Court will GRANT the motion to dismiss, (ECF No. 24), and the motion for summary judgment, (ECF No. 33).

## I.   SUMMARY OF ALLEGATIONS AND CLAIMS

According to his complaint, on December 28, 2023, Smith felt "tension in the pod" as he worked feeding inmates as Houseman 1 at Sussex I State Prison ("Sussex").  (ECF No. 1, at 2.)

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions.  The Court corrects the spelling, punctuation, and capitalization in quotations from the record.  The Court omits any secondary citations in the quotations from the parties' submissions.

Smith went to use the phone, and "head Blood member . . . Delbridge told [him], 'Hang up the phone, that's your last call.'" (*Id.*) Delbridge then informed Smith that he "was for the officers not the inmates, and that the other guys wanted to do something to [Smith] for that." (*Id.*) Smith reported this threat to Unit Manager Wethington-Godett, and her response was "just go back to the pod for now," so Smith "stood in the hall downstairs because they were still sending threats." (*Id.*)

The lunch cart arrived, and Building Supervisor Rigby came to inspect the trays. (*Id.*) Smith notified her about the threats against him, and she stated that she would take care of it and directed Smith to go back to the pod and distribute food before the lockdown. (*Id.*) Smith followed her instructions. (*Id.*)

When Smith was leaving his cell to collect food trays, he was approached by an inmate named Atkins who told Smith, "he wanted to fight." (*Id.* at 3.) Smith noticed Atkins had a weapon. (*Id.*) Smith turned to walk away, and Atkins stabbed Smith with a knife in both of his shoulders and arms. (*Id.*) Smith tried to defend himself, but two more inmates started attacking him, and stabbed him in his "neck, head, and back for a total of 12 times which caused [Smith] spinal cord injury." (*Id.*) Smith was airlifted to Chippenham Hospital for emergency care on December 29, 2023, and was admitted until January 10, 2024. (*Id.*) Smith was moved to Sheltering Arms until January 10, 2024, for physical therapy, and returned to Sussex on January 31, 2024. (*Id.* at 3–4.) Smith now has a noticeable limp and uses a cane. (*Id.* at 3.)

Smith raises the following claim for relief:

Claim One:    The defendants violated Smith's Eighth Amendment rights because they had "reckless disregard for his safety" and were "deliberate[ly] indifferen[t]" to his "safety by failing to act reasonably." (*Id.* at 4.)

As relief, Smith requests: "physical therapy, sentence reduction and financial compensation for [his] injuries suffered due to the gross negligence and deliberate indifference on the parts of [the] defendants." (*Id.*)

## II.    MOTION TO DISMISS

### A.    Standard for Motion to Dismiss

Pursuant to the Prison Litigation Reform Act ("PLRA"), this Court must dismiss any action filed by a prisoner if the Court determines the operative complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A. A claim is frivolous when it is based upon "an indisputably meritless legal theory," or when its "factual contentions are clearly baseless." *Clay v. Yates,* 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 327 (1989)).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a

3

plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**B.    Analysis**

Defendants first move to dismiss arguing that the VDOC is not a person under § 1983. Section 1983 allows suits against "persons"—generally state officials—for violations of civil rights. However, the state itself and entities that are "arms of the state" are not persons under § 1983 and are immune from suit. *See Will v. Mich. Dep't of Police*, 491 U.S. 58, 70–71 (1989); *Battle v. Ledford*, 912 F.3d 708, 714 (4th Cir. 2019) (explaining that § 1983 "applies only to state officials, not states themselves" (citing *Will*, 491 U.S. at 66)). Accordingly, because the VDOC is a state agency, it is immune from suit here and will be dismissed as a party to the action.

The defendants also argue that this Court cannot order much of the relief Smith seeks. Smith seeks compensatory damages against Wethington-Godett and Rigsby; however, to the

4

extent he seeks damages against these defendants in their official capacity, they are immune from suit. *See Lytle v. Griffith*, 240 F.3d 404, 408 (4th Cir. 2001) (explaining that "[s]tate officers acting in their official capacity are . . . entitled to Eleventh Amendment protection, 'because a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office" (citing *Will*, 491 U.S. at 71)).   Accordingly, any request for compensatory damages against these defendants in their official capacity will be dismissed.

Smith also seeks the Court to order a sentence reduction.   Smith fails to identify a procedural vehicle that would permit this federal court to order that his state sentence be reduced. To the extent that Smith seeks either release from custody or a sentence reduction, such a claim is not cognizable under § 1983.[2]  Any request for a sentence reduction will denied as improper. Therefore, the motion to dismiss (ECF No. 24) will also be granted as it relates to any sentence reduction.[3]

Accordingly, Claim One remains solely as a request for monetary damages against Defendants in their individual capacities.  Both Defendants have moved for summary judgment arguing that Smith failed to exhaust his administrative remedies.

---

[2] "[T]he settled rules [provide] that habeas corpus relief is appropriate only when a prisoner attacks the fact or duration of confinement, *see Preiser v. Rodriguez*, 411 U.S. 475 (1973); whereas, challenges to the conditions of confinement that would not result in a definite reduction in the length of confinement are properly brought" by some other procedural vehicle, including a 42 U.S.C. § 1983 complaint. *Olajide v. B.I.C.E.*, 402 F. Supp. 2d 688, 695 (E.D. Va. 2005) (emphasis omitted) (internal parallel citations omitted) (citing *Strader v. Troy*, 571 F.2d 1263, 1269 (4th Cir. 1978)). Thus, any challenge to the duration of his sentence must be brought pursuant to a habeas corpus petition under 28 U.S.C. § 2254.

[3] The defendants also argue that Smith's request for injunctive relief in the form of the Court ordering physical therapy is moot because of his transfer. The Court does not address that argument here because the defendants' arguments are not well-developed, and ultimately, all aspects of Smith's claims can be dismissed with prejudice for failure to exhaust his administrative remedies.

### III.    SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted).  When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

Defendants ask the Court to dismiss Claim One because Smith failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  Because the exhaustion of administrative remedies is an affirmative defense, the defendants bear the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007).  In support of summary judgment, the defendants submitted (1) the affidavit of Z. Dunson, the Institutional Ombudsman at Sussex (ECF No. 34-1, at 1–6);[4] (2) a copy of VDOC Operating Procedure 866.1, Offender Grievance Procedure ("Operating Procedure § 866.1," *id.* at 7–24); and (3) a grievance report and a copy of grievances that Smith during the relevant time period. (*id.* at 25–40).  Although Smith

---

[4] The Court utilizes the paragraph numbers for citations to the affidavit.  For the remainder of ECF No. 34-1, the Court cites to the page numbers.

filed a response,[5] he has not responded with any evidence to support his claim.[6]  Nevertheless,

Smith attached grievances materials to his "Response to the Defendants 'Affirmative Defenses'

---

[5] Smith's Response also fails to comply with Local Rule 56(B) and Federal Rule of Civil Procedure Rule 56(c).  Local Rule 56(B) provides:

> **(B) Summary Judgment – Listing Of Undisputed Facts:**  Each brief in support of a motion for summary judgment shall include a specifically captioned section listing all material facts as to which the moving party contends there is no genuine issue and citing the parts of the record relied on to support the listed facts as alleged to be undisputed. *A brief in response to such a motion shall include a specifically captioned section listing all material facts as to which it is contended that there exists a genuine issue necessary to be litigated and citing the parts of the record relied on to support the facts alleged to be in dispute.*  In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion.

E.D. Va. Loc. Civ. R. 56(B) (second emphasis added).  Smith's Response fails to comply with the above Rule.  Smith's Response lacks the required section of "all material facts as to which it is contended that there exists a genuine issue necessary to be litigated." E.D. Va. Loc. Civ. R. 56(B).  Smith also fails to "cit[e] the parts of the record relied on to support the facts alleged to be in dispute," as required by the Local Rules and the Federal Rules of Civil Procedure. *Id.*; *see also* Fed. R. Civ. P. 56(c)(1) (requiring nonmovant to "cit[e] to particular parts of materials in the record" and to show that "an adverse party cannot produce admissible evidence to support the fact").

[6] Smith attached what he claims are his notes from when he was in the hospital.  The Court has reviewed these notes, and they fail to alter the Court's conclusion that Smith failed to exhaust his administrative remedies before bringing this lawsuit.

Smith's Complaint is also not sworn to under penalty of perjury.  It instead contains a "VERIFICATION" that provides that "the content of the above complaint [] is true of my own knowledge, except as to those matters that are stated to be based on information and belief, and as to those matters, I believe them, to be true." (ECF No. 1, at 6.) Smith's "verification" is virtually identical to one that this Court previously rejected in *Hogge v. Stephens*, No. 3:09CV582, 2011 WL 2161100, *2–3 (E.D. Va. June 1, 2011), and is substantially similar to one that the United States Court of Appeals for the Fourth Circuit found to be lacking in *Walker v. Tyler Cnty. Comm'n*, 11 F. App'x 270, 274 (4th Cir. 2001).  As such, the Court must consider the contents of Smith's Complaint as "mere pleading allegations." *Hogge*, 2011 WL 2161100, at *3 (quoting *Walker*, 11 F. App'x at 274).

Moreover, the complaint has no jurat and was merely acknowledged before a notary. (ECF No. 1, at 4.) An acknowledgment is used to verify a signature and to prove that an instrument was executed by the person signing it, whereas a jurat is evidence that a person has sworn as to the truth of the contents of the document. In an acknowledgment, unlike a jurat, the affiant does not swear under oath nor make statements under penalty of perjury. *See Strong v. Johnson*, 495 F.3d 134, 140 (4th Cir. 2007) (explaining that jurat uses words "subscribed and sworn" and

7

and 'Partial Motion to Dismiss'" that the Court will consider. (ECF No. 29-1.) Smith also attached an affidavit to his complaint. (ECF No. 1-1.)

In light of the foregoing principles and submissions, the facts set forth below are established for the purposes of the pending Motion for Summary Judgment. All permissible inferences are drawn in favor of Smith.

## IV. PERTINENT FACTS

### A. Grievance Procedure at the VDOC

Offenders are oriented to the Offender Grievance Procedure when they are initially received into the VDOC, as well as when they transfer to a new facility. (ECF No. 34-1 ¶ 13.) Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. *See* Operating Procedure at § 866.1.II. "A verbal complaint is an inmate's first option to resolve issues quickly and informally with staff." *Id.* at § 866.1.II.A.1. If the issue is not resolved verbally, the offender should submit a *Written Complaint. Id.* at § 866.1.II.B.1. Prison staff have fifteen days from receipt of the *Written Complaint* to provide an appropriate written response. *Id.* at § 866.1.II.B.5. "If the inmate is dissatisfied with the staff's response or 15 days have passed without a response to their *Written Complaint*, the inmate may elect to file a *Regular Grievance.*" *Id.* at § 866.1.III.A.1. The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies. *Id.* at § 866.1.III.B.5. The offender must attach any required documentation demonstrating that he attempted to resolve

---

demonstrates an oath was administered); *Goode v. Gray*, No. 3:07cv189, 2009 WL 255829, at *2 n.6 (E.D. Va. Feb. 3, 2009). Thus, the complaint fails to constitute admissible evidence.

Nevertheless, the Court has reviewed all of these submissions and none of Smith's arguments alter the Court's conclusion that he failed to exhaust his administrative remedies.

the issue through the Informal Complaint process, therefore, the offender must submit a copy of his *Written Complaint* or his Emergency Grievance Response with his *Regular Grievance. Id.* at § 866.1.III.B.6.

There are exceptions to the thirty-day filing deadline for filing a Regular Grievance. (ECF No. 34-1 ¶ 7.) "[I]f the delay is beyond the inmate's control such as injury, then [the] inmate has five days to file their [regular] grievance once the reason for the delay is no longer valid." (*Id.* ¶ 18.)

### 1.    Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. Operating Procedure, at § 866.1.III.C.3—.4. "If the *Regular Grievance* does not meet the intake criteria, the Institutional Ombudsman has two working days from receipt to complete the *Intake* section on the *Regular Grievance* [form], indicating the reason for rejection and return the *Regular Grievance* to the inmate." *Id.* § 866.1.III.C.5. "The inmate is instructed how to remedy any problems with the grievance when feasible." (ECF No. 34-1 ¶ 8.) "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." Operating Procedcure, at § 866.1.III.C.6. "If the Regular Grievance does not meet the criteria for acceptance and review by the Regional Ombudsman and does not result in intake into the grievance process, the issue must be resubmitted in accordance with the criteria in OP 866.1 for acceptance." (ECF No. 34-1 ¶ 8.)

### 2.    Grievance Review

If the grievance is accepted, within two working days, prison "the Institutional Ombudsman must print and provide the *Grievance Receipt* to the inmate as notification of acceptance." Operating Procedure, at § 866.1.III.C.4. Once the grievance is accepted for review, the Institutional Ombudsman determines the proper course of investigation. *Id.* at § 866.1.III.D.1.

9

"Within 30 days of issuance of the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Inmate Grievance Response – Level I* returned to the inmate unless a continuance is authorized." *Id.* at § 866.1.III.F.2.(b).

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." *Id.* at § 866.1.IV.A. The appeal must be submitted within five days of *receipt* of the *Offender Grievance Response*. *Id.* at § 866.1.IV.B.2 (emphasis added). The Level II appeal is generally the final level of review. *See id.* at § 866.1.I.D.9.

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." *Id.* at § 866.1.V.B. Exhaustion of the Regular Grievance procedure is mandatory prior to litigation by the inmate. (ECF No. 34-1 ¶ 4.) "Reprisals are not imposed upon inmates for filing grievances." (*Id.*)

### B. Smith's Grievance Submissions

Z. Dunson, the Institutional Ombudsman, reviewed a Grievance Report for Smith for the dates between December 1, 2023, and January 16, 2026. (ECF No. 34-1 ¶ 12.) "A Grievance Report . . . logs all Informal/Written Complaints, Regular Grievances that were accepted at intake, and appeals to Level II of Regular Grievances, that have been filed by an inmate, in accordance with VDOC OP 866.1." (*Id.*) "Therefore, all Informal/Written Complaints, accepted Regular Grievances, and appeals . . . that Smith filed" between these dates "are reflected on his Grievance Report." (*Id.*) "A Grievance Report, however, does not reflect Regular Grievances that were rejected at intake, or emergency grievances." (*Id.*) However, if an inmate submits a Regular Grievance that is rejected at intake, "although that Regular Grievance is not shown on his Grievance Report, [Sussex] is required to date stamp the Regular Grievance and keep a copy of it in the inmate's Grievance File, before returning the rejected Regular Grievance to the inmate."

(*Id.* ¶ 11.) Any Informal/Written Complaints, accepted Regular Grievances, and appeals to Level II that Smith filed between December 1, 2023, through January 16, 2026, would be reflected on the Grievance Report. (*Id.* ¶ 12.)

On March 30, 2025, more than a year and three months after the December 28, 2023, incident, Smith drafted a Written Complaint (SXI-25-WRI-01596) indicating that on December 28, 2023, he notified Unit Manager Wethington-Godett and Building Officer Rigsby that he was having issues in the pod. (ECF No. 34-1, at 31.) Smith complained that he was not moved and was attacked by other inmates. (*Id.*) On April 16, 2025, Chap Johnson responded that "[t]his information will be conveyed to the appropriate staff." (*Id.*)

On April 18, 2025, Smith drafted a Regular Grievance raising the same issue as in his Written Complaint. (*Id.* at 27.) Smith indicated at he "did not receive a complaint receipt or a response . . . ." (*Id.*) On May 15, 2025, Institutional Ombudsman Lampman rejected the Regular Grievance at intake because he failed to "use the informal complaint process and [did not] submit a *Written Complaint.*" (*Id.* at 28.)

On May 23, 2025, the Grievance Office received another Regular Grievance from Smith complaining about the incident on December 28, 2023. (*Id.* at 29.) Smith indicated that he attached his Written Complaint SXI-25-WRI-01596. (*Id.*) On May 23, 2025, Z. Dunson rejected the Regular Grievance at intake for "Expired Filing Period" because Smith failed to submit his grievance within 30 days or the original incident. (*Id.* at 30.)[7] Smith appealed the intake decision to the Regional Ombudsman, who upheld the decision on June 17, 2025. (*Id.*)

"[T]here are exceptions to the 30-day timeline for filing a regular grievance if the delay is beyond the inmate's control such as injury," and in those situations the "inmate has five days to

_____

[7] Z. Dunson wrote "3/28/23;" however, this is clearly a typo as the incident underlying Smith's complaints occurred on December 28, 2023. (ECF No. 34-1, at 30.)

file their grievance once the reason for the delay is no longer valid." (ECF No. 34-1 ¶ 18.) However, Smith failed to file a Regular Grievance with that timeline.

Z. Dunson explains:

> According to a Facility response given to Smith, he was offsite at a medical facility from December 29, 2023, to January 31, 2024. He returned to [the Sussex] medical unit on January 31, 2024. While in medical Smith would have had the opportunity to utilize the grievance process. He could have requested grievance forms from any of the officers working in the medical unit. Smith would have had to submit a regular grievance about the incident and that a delay was due to offsite medical treatment, no later than February 5, 2024 to have timely grievance filing. He could have submitted a written complaint first and then followed with [a] regular grievance without waiting for a response to the written complaints.

(*Id.* ¶ 19.) Z. Dunson also explains that, in the alternative, "Smith could have submitted a written complaint when he returned and [she] would have used [her] discretion to allow Smith to go through the grievance process, starting the 30 day time period once he submitted a written complaint. However, starting the process a year later is not acceptable." (*Id.* ¶ 20.)

Because Smith did not file a Regular Grievance that was accepted for intake and appealed through all levels of review, he failed to exhaust his administrative remedies for his claims. (*Id.* ¶ 21.)

## V.    EXHAUSTION ANALYSIS

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001). Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See*

*Woodford v. Ngo*, 548 U.S. 81, 90 (2006). The Supreme Court has instructed that § 1997e(a) "requires proper exhaustion." *Id.* at 93. The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits," *id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Nevertheless, "an administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016).

It is undisputed that Smith failed to file a Regular Grievance that was accepted at intake and pursue it through all required levels of review. Although Smith was clearly in the hospital between December 29, 2023, and January 31, 2024, when he returned to Sussex, he did not file any grievance material related to the December 28, 2023 incident until March 23, 2025. Smith puts forth no evidence that the administrative process was unavailable to him after he returned from the hospital on January 31, 2024, much less for more than a year after his return from the

13

hospital.[8]  Thus, the record reflects that Smith failed to exhaust his administrative remedies.

Accordingly, Claim One will be dismissed with prejudice.[9]

## V.    CONCLUSION

.        The motion to dismiss, (ECF No. 24), and the motion for summary judgment, (ECF No. 33), will be GRANTED.  The request for a sentencing reduction will be DENIED as improper.

Claim One will be DISMISSED WITH PREJUDICE.  The action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

/s/

John A. Gibney, Jr.
Senior United States District Judge

Date:  9 July 2026
Richmond, Virginia

---

[8] In his Response, at most, Smith submitted his notes from when he "was in the hospital to show his mind state being medicated and afraid and how prison officials were making comments and tactics to intimidate me.  Ross v. Blake, 578 U.S. 632." (ECF No. 36, at 1.)  However, the time when he was hospitalized was excused.  Smith fails to provide any explanation about why he was unable to exhaust his administrative remedies in a timely manner upon his release from the hospital.

[9] Although the normal remedy for a failure to exhaust under § 1997e(a) is dismissal without prejudice, see, e.g., Booth, 532 U.S. at 735, dismissal with prejudice may be appropriate "where exhaustion was required but administrative remedies have become unavailable after the prisoner had ample opportunity to use them and no special circumstances justified failure to exhaust." Berry v. Kerik, 366 F.3d 85, 88 (2d Cir. 2004); see Van Houten v. Marlett, 330 F. App'x 161, 162–63 (10th Cir. 2009).  That is the case here because the thirty-day time limit for filing any relevant grievance has long since expired.  Consequently, Claim One will be dismissed with prejudice.